**MAGNA BANK OF MADISON COUNTY, Plaintiff/Respondent/Cross–Appellant,**

v.

**W.P. FOODS, INC., d/b/a Edray Foods, Charles Evans and Patricia Evans, Defendants/Appellants/Cross–Respondents.**

Nos. 68800, 68847.

Missouri Court of Appeals, Eastern District, Division Two.

June 4, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1996.

Application to Transfer Denied Aug. 20, 1996.

Donald S. Hilleary, Alan J. Agathen, St. Louis, for Appellant.

William R. Bay, James W. Erwin & Mike W. Bartolacci, Thompson & Mitchell, St. Louis, for Respondents.

CRANDALL, Judge.

Defendants, W.P. Foods, Inc., d/b/a Edray Foods, Charles and Patricia Evans, appeal from that portion of the trial court's judgment which granted summary judgment in favor of plaintiff, Magna Bank of Madison County (Magna Bank), in an action to collect the principal and interest due on two promissory notes. Magna Bank also appeals, challenging that portion of the trial court's judgment which denied its request for attorney's fees and costs incurred in collecting on the notes. Affirmed in part and reversed and remanded in part.

The record establishes that defendants, Charles and Patricia Evans, agreed to purchase a wholesale food business, W.P. Foods, Inc. (business), from Wesley and Audrey Williams.[1] Prior to reaching an agreement regarding the purchase, Evans independently examined the records, books, and inventory of the business as well as the real estate. Magna Bank informed him that the business owed it a total of approximately $430,000.00. This figure differed from the $207,000.00 listed on the business' balance sheet as the amount of bank loans. Evans did not question Magna Bank about the discrepancy between the two figures; but closed on the purchase of the business, despite Williams' inability to adequately explain the discrepancy. With the exception of furnishing information to Evans about the aggregate amount of the loans owed to it by the business, Magna Bank did not participate in the negotiations between Evans and Williams. Magna Bank did, however, agree to provide fi-

1. Hereinafter, Charles and Patricia Evans will be referred to singularly as "Evans" and Wesley and Audrey Williams will be referred to singularly as "Williams".

nancing to Evans after Evans and Williams reached an agreement.

On August 10, 1990, Evans and Williams signed a written purchase agreement setting forth the terms of their agreement. Evans agreed to purchase both the stock and the real estate of the business from Williams, for a total price of $450,000.00. Williams agreed to pay off loans which he owed to Magna Bank. Magna Bank furnished a closing statement, dated August 10, 1990, to Evans indicating how Williams' loans with Magna Bank were to be repaid.

Evans borrowed money from Magna Bank to finance the purchase of the business, executing two promissory notes, dated August 9, 1990:[2] one in the principal amount of $125,000.00, signed by Evans, individually and in behalf of the business; and another in the principal amount of $350,000.00, signed by Evans, secured by a mortgage on the real property. Evans ceased paying on the notes in 1992. Magna Bank demanded payment on February 1, 1993. On April 15, 1993, Magna Bank brought the present action against the business and Evans, seeking to recover the unpaid principal and interest due on the two notes.

Evans filed a counterclaim and a third-party petition. Count I was against both Magna Bank and Williams and sought rescission of the purchase agreement with Williams and of the notes with Magna Bank, alleging that misrepresentations on the closing statement induced Evans to purchase the business and to execute the promissory notes. In the alternative, Count II was solely against Williams and sought actual and punitive damages for fraudulent misrepresentations by Williams.

Magna Bank moved for summary judgment against Evans on the promissory notes. In support of its motion, it submitted copies of both promissory notes, depositions, affidavits, answers to interrogatories, and other exhibits. It sought the principal and interest due on the notes as well as attorney's fees and costs incurred in collecting on the notes.

The trial court granted summary judgment in favor of Magna Bank on Magna Bank's claims on the notes against Evans and on Evans' counterclaim against Magna Bank. The trial court, however, denied Magna Bank's request for attorney's fees and costs. The court found there was no just reason for delay and certified its order final and appealable pursuant to Rule 74.01(b).

In his first point, Evans claims the trial court erred in designating its judgment final for purposes of appeal under Rule 74.01(b). He argues that Count I of his counterclaim and third-party petition was an action for fraud against both Magna Bank and Williams and that there was considerable factual overlap in these claims.

A fundamental prohibition exists against piecemeal appeals. *Saganis–Noonan v. Koenig,* 857 S.W.2d 499, 501 (Mo.App. E.D.1993). Rule 74.01(b) is an exception to this rule, allowing the court to certify for appeal a judgment on fewer than all the claims or parties only upon a finding that there is "no just reason for delay." *Id.* The rule provides as follows:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.

The decision about whether and when to sustain a Rule 74.01(b) motion is a matter of discretion with the trial court. *A & M Bldg., Inc. v. Wiles,* 859 S.W.2d 183, 185–186 (Mo.App. S.D.1993). Four factors are considered important in determining whether there is no just reason for delay: (1) whether the action remains pending at the trial court as to all parties; (2) whether similar relief can be awarded in each separate count; (3) whether determination of the trial court claims would moot the appellate

---

**2.** In his affidavit, Evans contends that he did not sign the promissory notes on August 9, but signed them on August 10 at the closing. Although this creates an issue of fact, it does not create a "genuine issue of material fact" such that a trial is warranted. *See ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 381 (Mo. banc 1993).

claim; and (4) whether the factual underpinnings of all the claims are intertwined. *Saganis–Noonan*, 857 S.W.2d at 501. In ruling on such a motion, the court's discretion is to be exercised in the interest of sound judicial administration. *A & M Bldg.*, 859 S.W.2d at 186. The appellate court should disturb the trial court's determination only if it can be said that the trial court's conclusion was clearly unreasonable. *Id.*

■ Here, the record before us does not support a finding that the court's ruling was clearly unreasonable. Evans' petition involved two distinct actions against two different parties: the counterclaim against Magna Bank sought rescission of the promissory notes executed by Evans to obtain financing to purchase the business; the third party claim against Williams sought rescission of a totally separate agreement between Evans and Williams to purchase the business. The factual underpinnings of the claims were not intertwined. There was no allegation that the parties acted in concert or conspired to perpetrate a fraud on Evans to induce him to enter into the different agreements. The trial court's grant of summary judgment in favor of Magna Bank disposed of all of Magna Bank's claims against Evans and all Evans' claims against Magna Bank. Evans' remaining claims against Williams and the attendant issues were separable from the claims between Magna Bank and Evans. In addition, it does not appear likely that a later appeal regarding the remaining issues would require the appellate court to determine the same issues twice. Evans' first point is denied.

In his second point, Evans contends the trial court erred in granting summary judgment in favor of Magna Bank on its action against Evans and on Evans' counterclaim against Magna Bank.

■ When considering an appeal from a summary judgment, the court will review the record in the light most favorable to the party against whom judgment was entered and will accord the nonmovant the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). Facts set forth by

affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment. *Id.* Review by the appellate court is essentially *de novo. Id.* Because the trial court's judgment is founded on the record submitted and the law, the appellate court need not defer to the trial court's order granting summary judgment. *Id.* The burden on a summary judgment movant is to show a right to judgment flowing from the facts about which there is no genuine dispute. *Id.* at 378. Once a movant has met this burden, the non-movant's only recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.* at 381. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law. *Id.*

■ In the first prong of this point, Evans challenges the trial court's grant of summary judgment in favor of Magna Bank on its action against Evans on the two promissory notes. In a suit on a promissory note, a plaintiff makes a prima facie case when the note admittedly signed by the makers is introduced into evidence and there is evidence to show that the note is unpaid or there is a balance due and owing. *Bank of Kirksville v. Small*, 742 S.W.2d 127, 130 (Mo. banc 1987). When a plaintiff establishes a prima facie case, he is entitled to recover on the promissory note unless the defendant establishes a defense. *Id.* The burden is on the defendant to establish any and all defenses to plaintiff's recovery. *Id.*

Here, there was no dispute that Evans signed the notes, that Magna Bank disbursed the funds in accordance with the notes, and that Evans eventually refused to pay on the notes. Magna Bank thus made a prima facie case against Evans on the promissory notes.

■ As a defense to Magna Bank's recovery on the notes, Evans maintains there was a material issue of fact as to the amounts of principal and interest due on the notes and

points to discrepancies in the figures listed on six computer-generated statements prepared by Magna Bank. Magna Bank's evidence, by way of affidavit and deposition, however, established the actual amounts due on both notes and explained the reasons for the disparity in the numbers listed on the statements. Although Evans did not admit to the accuracy of the loan balances offered by Magna Bank, he presented no evidence to contradict the amounts. In addition, in his deposition testimony, Evans agreed with the proposition that the balances of the notes were readily ascertainable by simple mathematical calculation. Evans' doubts about the amount of principal and interest due were not sufficient to create a material issue of fact. *See, e.g., American Bank of Princeton v. Stiles,* 731 S.W.2d 332, 339 (Mo.App.1987). Evans therefore failed to sustain his burden of establishing a defense to Magna Bank's recovery on the promissory notes.

In the second prong of this point, Evans contends the trial court erred in granting summary judgment in favor of Magna Bank on his counterclaim. In his counterclaim, Evans alleged that false representations contained in the closing statement, furnished by Magna Bank and dated August 10, 1990, induced him to enter into the purchase agreement with Williams for the business and to finance the purchase with the money borrowed from Magna Bank. The closing statement reflected how the proceeds of the loans to Evans were to be disbursed to pay off Williams' loans with Magna Bank.

■■■ When fraud is alleged, the burden of proof as to each element falls on the party asserting the fraud and fraud is never presumed. *Arnott v. Kruse,* 730 S.W.2d 597, 600 (Mo.App.1987). The elements necessary to support a case of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of the truth; (5) the speaker's intent that his representation be acted upon; (6) the hearer's ignorance of the falsity; (7) his reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's subsequent and proximate injury. *Bank of Kirksville,* 742 S.W.2d at 131. A person claiming fraud must establish each of the nine elements. *Id.*

■■■ Here, Evans did not establish the essential elements of a fraud claim as a matter of law. One element which Evans failed to prove was that he signed either the purchase agreement or the promissory notes in reliance on the truth of the representations contained in the closing statement furnished by Magna Bank.

Evans did not demonstrate that the closing statement induced him to enter into the purchase agreement with Williams. By his own admission, Evans determined to purchase the business and negotiated the terms of the purchase agreement prior to seeing the closing statement provided by Magna Bank. The terms of his agreement with Williams were merely memorialized in the purchase agreement of August 10, 1990. Magna Bank did not participate in the negotiations leading up to the agreement between Evans and Williams.

In addition, Evans conducted his own investigation and evaluation of the business prior to the closing. But for supplying information about the aggregate amount of the loans Williams had with it, Magna Bank was not a party to Evans' investigation. When a party makes an independent investigation, he is presumed to have relied on what he learned from that investigation and may not claim that he relied on a contrary representation. *Arnott,* 730 S.W.2d at 601.

The trial court did not err in granting summary judgment in favor of Magna Bank on its action against Evans on the promissory notes and on Evans' counterclaim against Magna Bank. Evans' second point is denied.

In its appeal, Magna Bank contends the trial court erred in denying its request for attorney's fees and costs. Magna Bank based its claim for these expenses on provisions in both notes which expressly provided for the payment of attorney's fees and costs incurred in collecting on the notes.

■■■ If a contract provides for the payment of attorney's fees and expenses incurred in the enforcement of a contract provision, the trial court must award them to the

prevailing party. *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness, Inc.,* 884 S.W.2d 733, 739 (Mo.App. E.D.1994). Magna Bank is therefore entitled to reasonable attorney's fees and costs incurred in collecting on the two promissory notes, because the notes specifically provided for the payment of those expenses. Magna Bank's point on appeal is granted.

We affirm that portion of the judgment which granted summary judgment in favor of Magna Bank. We reverse that portion of the judgment which denied Magna Bank its attorney's fees and costs and remand the cause to the trial court to determine the amounts to which Magna Bank is entitled.

CRAHAN, P.J., and DOWD, J., concur.